

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/29/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

EDWIN OMAR RAMOS, RAYNIEL VARGAS,          :
and ANTHONY CRUZ,                          :
                                           :
       Plaintiffs,                         :
                                           :      **OPINION & ORDER**
  -against-                              :      20-CV-4904 (PAE) (JLC)
                                           :
GUABA DELI GROCERY CORP. *d/b/a*           :
GUABA DELI, JOSE CASTILLO,                  :
LUIS RIVERA, and DAISY GUABA,              :
                                           :
      Defendants.                        :

-----------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Edwin Omar Ramos, Rayniel Vargas, and Anthony Cruz (collectively, "Plaintiffs") brought this action against Guaba Deli Grocery Corp., Jose Castillo, Luis Rivera, and Daisy Guaba (collectively, "Defendants"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs have moved for summary judgment as to their minimum wage, overtime wage, spread-of-hours, and wage notice and wage statement claims under the FLSA and NYLL, and seek liquidated damages, prejudgment interest, and attorneys' fees and costs. For the reasons set forth below, Plaintiffs' motion is granted in its entirety.[1]

---

[1] The parties have consented to my jurisdiction for the purposes of deciding Plaintiffs' summary judgment motion, pursuant to 28 U.S.C. § 636(c). Dkt. No. 34.

# I.  BACKGROUND

## A.  Facts

Unless otherwise noted, the following facts are undisputed.  Guaba Deli Grocery Corp ("Guaba Deli") is a New York corporation that operates a deli at 774 East 149th Street, Store 4, in the Bronx.  Plaintiffs' Statement of Undisputed Facts Pursuant to Local Civ. Rule 56.1 ("SUF"), Dkt. No. 32, ¶¶ 1–2.  Guaba Deli had annual revenues in excess of $500,000 in both 2018 and 2019.  *Id.* ¶ 3.  Guaba Deli is engaged in interstate commerce.  *Id.* ¶¶ 3–4.

Since June 2017, Defendant Jose Castillo ("Castillo") has been the president and a co-owner of Guaba Deli and possesses the power to hire and fire employees, set employee wages and schedules, and maintain employee records.  *Id.* ¶¶ 6–7.  Castillo signed the lease for Guaba Deli's storefront and controls the store's liquor license.  *Id.* ¶ 7.  Defendant Daisy Guaba ("Guaba") has been a co-owner of Guaba Deli since June 2017, supervises employees one day per week, and possesses the power to hire and fire employees, set employee wages and schedules, and maintain employee records.  *Id.* ¶¶ 14–16.  Defendant Luis Rivera ("Rivera"), Guaba's husband, is the manager of Guaba Deli and oversees its day-to-day operations.  *Id.* ¶¶ 9–13, 17–18.  He possesses the power to hire and fire employees, set employee wages and schedules, pay employees, and maintain employee records (and exercised that power during Plaintiffs' period of employment).  *Id.*

Plaintiff Edwin Omar Ramos ("Ramos") was formerly employed by Guaba Deli from October 2018 through December 5, 2019.  Complaint ("Compl."), Dkt. No.

1, ¶¶ 3, 27; SUF ¶¶ 20–21.  Ramos worked six days each week from 5:00 p.m. to

4:00 a.m. (for a total of 11 hours per day and 66 hours per week) and earned $650

each week throughout his employment.  SUF ¶¶ 23–24, 39.[2]  Plaintiff Rayniel

Vargas ("Vargas") was formerly employed by Guaba Deli from January 2018

through January 2019.  Compl. ¶ 4; SUF ¶¶ 25–29.  Vargas worked six days each

week from 7:00 a.m. to 5:00 p.m. (for a total of 10 hours per day and 60 hours per

week) and earned $550 each week throughout his employment.  *Id.* ¶¶ 28–29, 44.

Plaintiff Anthony Cruz ("Cruz") was formerly employed by Guaba Deli from October

2018 through February 2020, with three months off in 2019.  Compl. ¶ 5; SUF

¶¶ 30–31.[3]  Cruz worked six days each week from 7:00 a.m. to 5:00 p.m. (for a total

of 10 hours per day and 60 hours per week) and earned $550 per week throughout

his employment.  SUF ¶¶ 33–34, 48.[4]  Plaintiffs performed the roles of cashier, food

preparer, cleaner, and stocker.  *Id.* ¶¶ 22, 27, 32.

---

[2] In his declaration, Ramos states that he earned $600 per week during his
employment at Guaba Deli.  Declaration of Edwin Ramos dated March 22, 2021
("Ramos Decl."), Dkt. No. 31-1, ¶ 16.  However, Defendants contend (and Plaintiffs
seem to accept in their Rule 56.1 Statement and damages calculations) that Ramos
earned $650 per week.  Affidavit of Luis Rivera dated April 29, 2021 ("Rivera Aff."),
Dkt. No. 38, ¶ 3; SUF ¶ 39; Supplemental Declaration of David Stein dated May 5,
2021 ("Stein Supp. Decl.") Ex. A, Dkt. No. 42-1, at 2.  Therefore, for the purposes of
this motion, the Court will presume that Ramos earned $650 per week.

[3] Defendants contend that Cruz was on leave for three months.  Rivera Aff. ¶ 14.
Although Plaintiffs previously contended that Cruz was on leave for only one
month, SUF ¶ 31, for the purposes of this motion, Plaintiffs have accepted that Cruz
was on leave for three months.  Reply Memorandum of Law in Support of Plaintiffs'
Motion for Summary Judgment ("Pl. Reply"), Dkt. No. 41, at 6–7.

[4] Plaintiffs claim that Cruz worked 63 hours per week, but for the purposes of this
motion have accepted Defendants' contention that Cruz worked 60 hours per week.
SUF ¶ 34 n.7.  Moreover, in his declaration, Cruz states that he earned $500 per
week from October 2018 to September 2019, and $550 per week from September

Defendants did not provide a time clock, sign-in sheet, or any other methods for Plaintiffs to track their hours worked and did not separately maintain any records of Plaintiffs' hours worked. *Id.* ¶¶ 35, 37. Plaintiffs were paid on a salary basis rather than hourly, were paid in cash, and did not receive paystubs or wage statements. *Id.* ¶¶ 35–38, 42–43, 51–52. Defendants did not pay an overtime premium to Plaintiffs, although they were aware of their obligation to do so. *Id.* ¶¶ 40, 45, 49, 56–57. Defendants did not consult with an accountant or bookkeeper to determine how to pay employees and were unaware of the minimum wage rate when setting Plaintiffs' wages. *Id.* ¶¶ 58–59. Defendants also did not pay a "spread of hours" premium to Ramos and were unaware of their obligation to do so. *Id.* ¶¶ 41, 60. Plaintiffs did not receive a notice describing the parameters of their pay and were never asked to sign such a notice. *Id.* ¶¶ 53–55.

### B. Procedural History

Plaintiffs commenced this action on June 26, 2020 and alleged the following: (1) violations of NYLL by failure to pay minimum wage; (2) willful violations of the FLSA by failure to pay overtime; (3) willful violations of NYLL by failure to pay overtime; (4) willful violations of NYLL by failure to pay "spread of hours" for Ramos; and (5) willful violations of NYLL by failing to comply with the Wage Theft

---

2019 to February 2020 during his employment at Guaba Deli. Declaration of Anthony Cruz dated March 17, 2021 ("Cruz Decl."), Dkt. No. 31-3, ¶ 16. However, Defendants contend (and Plaintiffs seem to accept in their Rule 56.1 Statement and damages calculations) that Cruz earned $550 per week throughout his employment. Rivera Aff. ¶ 10; SUF ¶ 48; Stein Supp. Decl. Ex. A at 4. Therefore, for the purposes of this motion, the Court will presume that Cruz earned $550 per week.

Prevention Act ("WTPA") in providing wage notices or wage statements.  Compl. ¶¶ 1–2.[5]  On August 13, 2020, Defendants filed an answer to the Complaint.  Answer, Dkt. No. 16.

On March 23, 2021, after the close of discovery, Plaintiffs moved for summary judgment on all their claims.  Motion for Summary Judgment, Dkt. No. 30; Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem."), Dkt. No. 33.  On April 25 and April 29, 2021, Defendants submitted their opposition papers, which were comprised of an affirmation of counsel and an affidavit of Defendant Rivera.  Affirmation of Benjamin Sharav, Esq. in Opposition dated April 25, 2021 ("Sharav Affirm."), Dkt. No. 35; Rivera Aff.  Both the Sharav Affirmation and the Rivera Affidavit dispute Plaintiffs' total hours worked, the length of Cruz's leave in 2019, and the calculation of damages.

On May 6, 2021, the Plaintiffs submitted their reply papers, including a supplemental declaration of counsel attaching exhibits with corrected damages calculations. Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Reply"), Dkt. No. 41; Stein Supp. Decl., Dkt No. 42.

### C. Defendants' Submissions

As an initial matter, Plaintiffs argue that their motion for summary judgment should be granted because of Defendants' procedurally deficient

---

[5] Although the Complaint initially included collective action allegations on behalf of a group of similarly situated individuals, Plaintiffs have not moved to certify a collective action, and therefore the Court only considers the individual Plaintiffs' claims.  *See* Compl. ¶¶ 21–25.

opposition papers.  Pl. Reply at 1.  Specifically, Plaintiffs note that Defendants have failed to submit a Local Civil Rule 56.1 statement and a memorandum of law, and that the Sharav Affirmation and Rivera Affidavit are not based on personal knowledge and consist of mostly conclusory statements.  Pl. Reply at 1.

Local Civil Rule 56.1 requires any motion for summary judgment to be accompanied by a statement of material facts itemized into numbered paragraphs followed by a citation to the evidence in support of those facts that would be admissible.  Local Civ. R. 56.1(a) & (d).  The rule provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civ. R. 56.1(c). Therefore, a party's failure to comply with Local Rule 56.1 "is grounds for deeming admitted the facts contained in [the opposing party's] Rule 56.1 statement." *Prunella v. Carlshire Tenants, Inc.*, 94 F. Supp. 2d 512, 513 n.1 (S.D.N.Y. 2000); *see also Collins v. Travers Fine Jewels Inc.*, No. 16-CV-3780 (SN), 2018 WL 1470590, at *1–2 (S.D.N.Y. Mar. 23, 2018) (admitting facts in plaintiff's Rule 56.1 statement because defendants only filed sworn affidavit from counsel with no memorandum of law or Rule 56.1 statement).

Moreover, "[a] party who declines to respond to a Rule 56.1 statement in the proper form eschews its right to have the Court search the record to determine whether the allegedly undisputed fact is in fact disputed."  *Keawsri v. Ramen-Ya*

*Inc.*, No. 17-CV-2406 (LJL), 2021 WL 3540671, at *3 (S.D.N.Y. Aug. 10, 2021) (citing *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may instead "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a [Rule 56.1] statement." *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)) (internal quotation marks omitted and further citation omitted). "[T]he court can also disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement." *Weider Health & Fitness v. AusTex Oil Ltd.*, No. 17-CV-2089 (RMB) (OTW), 2018 WL 8579820, at *2 (S.D.N.Y. Dec. 19, 2018).

Here, Defendants have failed to submit a statement that complies with Local Civil Rule 56.1. They have only submitted an affidavit from Rivera and an affirmation from their counsel contending that Plaintiffs' motion papers overstate their hours worked and damages owed. Rivera Aff. ¶ 2; Sharav Aff. ¶ 2. Neither submission cites any evidence in the record to support these assertions. In addition, Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that an affidavit or declaration used to support or oppose a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Collins*, 2018 WL 1470590, at *1 (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999)). Moreover, "attorneys' affidavits not based upon personal knowledge

have been held not to comply with Rule 56(e) at least since *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831 (1950), a position [the Court of Appeals] has frequently reiterated." *Id.* (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) and citing *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986)).

Both Sharav's affirmation and Rivera's affidavit fail to comply with Rule 56(c)(4) or Local Civil Rule 56.1's requirements.  First, Sharav's affirmation is replete with conclusory allegations and argumentative statements, such as "the evidence shows that the defendants intended to pay minimum wage and under paid for the total hours worked."  Sharav Aff. ¶ 6.  Moreover, the affirmation sets forth information about Plaintiffs' dates of employment and hours worked, *see, e.g.,* Sharav Aff. ¶¶ 6, 11, 16 – information that the Court has no basis to assume is based on Sharav's personal knowledge.  For these reasons, the Court will not give any weight to Sharav's affirmation.  *See, e.g., Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight."); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 433 n.2 (S.D.N.Y. 2007) ("The law is clear that an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment.").[6]

---

[6] In addition, Sharav's affirmation is virtually identical to Rivera's affidavit, and it is unclear why Defendants made two essentially identical submissions.

Similarly, the relevant portions of Rivera's affidavit are not based on personal knowledge and are conclusory.  For example, although Rivera asserts that Plaintiffs failed to account for half-hour lunch breaks in calculating their hours worked, Rivera Aff. ¶¶ 8, 15, 20, he does not cite to any evidence in the record supporting that assertion, nor does he provide any basis for his personal knowledge regarding the lunch breaks (such as stating that he was present during Plaintiffs' lunch breaks, that Defendants kept records regarding the hours Plaintiffs worked, or that Defendants discussed lunch breaks with Plaintiffs when setting their schedules).  In addition, Rivera's statements regarding Plaintiffs' dates of employment contradict Plaintiffs' testimony and Defendants' own responses to Plaintiffs' Requests for Admission.  SUF ¶¶ 21, 26, 31; Stein Decl. Ex. F, Dkt. No. 31-6, at ECF 11–12.[7]

Given these deficiencies, "the Court is not required to search the record for genuine issues of material fact that [Defendants] failed to bring to the Court's attention . . . ." *Baity v. Kralik*, 51 F. Supp. 3d 414, 421–22 (S.D.N.Y. 2014) (citing *Holtz*, 258 F.3d at 73).  However, the Court is "mindful that '[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is

---

[7] As Plaintiffs acknowledge, Pl. Reply at 4–5, some of Defendants' proffered dates appear to be typographical errors, given that Defendants' proposed damages calculations contradict other assertions in Rivera's affidavit and rely on employment dates that are generally consistent with Plaintiffs' testimony.  *Id.* Moreover, as discussed below, to the extent anything in Rivera's affidavit contradicts an assertion in Plaintiffs' Rule 56.1 Statement, the Court will review the evidence cited in the 56.1 statement and determine whether it supports the proposition for which it is cited.

entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Id.* at 421 (internal citations omitted). Therefore, the Court will review Plaintiffs' Rule 56.1 statement to determine as to each paragraph whether it states a matter of fact or expresses a conclusion or opinion. "Where the 56.1 statement purports to state a matter of fact, the Court will review the evidence cited to determine whether it supports the proposition for which it is cited." *Keawsri*, 2021 WL 3540671, at *3. Where the evidence does so, "the Court will treat the matter of fact as not in genuine dispute and will not independently search the record to create a factual question for Defendants that they have failed to identify through the filing of a proper Rule 56.1 statement." *Id.* In so doing, the Court will "only rel[y] upon uncontroverted paragraphs of [Plaintiffs'] Rule 56.1 Statement where the record evidence duly supports [Plaintiffs'] contentions." *Id.* (quoting *Baity*, 51 F. Supp. 3d at 421).[8]

---

[8] Notably, Defendants have also failed to comply with Local Rule 7.1, which requires that a memorandum of law setting forth the legal arguments and authorities relied upon accompany any motion or opposition thereto. If a party fails to comply with this rule, the court has discretion to grant the motion by default. *See* Local Civ. Rule 7.1; *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 511 n.2 (S.D.N.Y. 2000). "An affirmation alone will not satisfy the requirements of Rule 7.1. Some courts have recognized that while granting a motion to dismiss a claim for failure to comply with Rule 7.1 is permissible, a less severe outcome may be warranted in the interests of justice or efficiency." *Microsoft Corp. v. K&E Computer Inc.*, No. 00-CV-7550 (RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (citing *Briarpatch*, 81 F. Supp. 2d at 511 n.2). Therefore, in the interests of justice, the Court will not grant Plaintiffs' motion by default despite Defendants' failure to submit a memorandum of law.

## II.  DISCUSSION

### A. Summary Judgment Standard

Rule 56 "allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim(s) or defense(s) are undisputed and that those facts entitle the party to the judgment sought." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). A motion for summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a genuine issue exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Bolling v. City of New York*, No. 18-CV-5406 (PGG) (RWL), 2021 WL 961758, at \*4 (S.D.N.Y. Mar. 15, 2021) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)) (internal citations omitted). "A moving party can demonstrate the absence of a genuine issue of material fact 'in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" *Id*. at \*5 (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107, 114 (2d Cir. 2017)).

"When considering a motion for summary judgment, the court is not to weigh the evidence but is instead 'required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Konteye v. New York City*

*Dep't of Educ.*, No. 17-CV-2876 (GBD) (RWL), 2019 WL 3229068, at *2 (S.D.N.Y. July 18, 2019) (quoting *Phillips v. DeAngelis*, 331 F. App'x 894, 894–95 (2d Cir. 2009)).  "[I]n opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise." *Guerra v. Trece Corp.*, No. 18-CV-625 (ER), 2020 WL 7028955, at *2 (S.D.N.Y. Nov. 30, 2020) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). Rather, "[t]o defeat a motion for summary judgment, the nonmoving party must provide hard evidence, from which a reasonable inference in [its] favor may be drawn." *Konteye*, 2019 WL 3229068, at *2 (internal quotations and citations omitted); *see Cuffee v. City of New York*, No. 15-CV-8916 (PGG) (DF), 2018 WL 1136923, at *4 (S.D.N.Y. Mar. 1, 2018) ("[a non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor.") (internal quotations and citations omitted).

Plaintiffs seek summary judgment on both their FLSA and NYLL claims. Pl. Mem. at 1.  Defendants do not dispute their failure to pay the proper overtime and minimum wage rates and to provide proper wage notices and statements, but they dispute the number of hours Plaintiffs worked, Plaintiffs' dates of employment, and the amount of damages owed.  Rivera Aff. ¶¶ 2, 8–9 , 15–16, 20–21. The Court first considers whether Defendants were Plaintiffs' employers for the purposes of the FLSA and NYLL before turning to the question of Defendants' liability and Plaintiffs' damages.

### B. Coverage Under the FLSA and NYLL

To state a claim for wages under the FLSA, a plaintiff must first show that "[he] is a 'covered employee,' who was 'employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.'" *Allison v. Clos-ette Too, L.L.C.*, No. 14-CV-1618 (LAK) (JCF), 2015 WL 9591500, at *7 (S.D.N.Y. Apr. 20, 2015), *adopted by* 2015 WL 5333930 (Sept. 14, 2015) (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011)) (internal alterations omitted); se*e also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985).  Therefore, "[e]ngagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement." *Keawsri*, 2021 WL 3540671, at *4 (quoting *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015)) "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  *Id.* (quoting *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009)).  An enterprise is "engaged in commerce" when it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."  *Id.* (quoting 29 U.S.C. § 203(s)(1)(A)).  "The word 'commerce' in this provision refers to 'interstate commerce.'" *Id.* (internal citations omitted).

### 1. Guaba Deli Is An "Enterprise Engaged In Commerce"

Defendants do not dispute that Guaba Deli is engaged in interstate commerce and that it had annual revenues in excess of $500,000 in 2018 and 2019. SUF ¶¶ 3–4. Therefore, Guaba Deli is an "enterprise engaged in commerce" and may be liable for violations of the FLSA. *Id.* ¶3; *Ethelberth*, 91 F. Supp. 3d at 353. Because Guaba Deli was an "enterprise engaged in commerce" during Plaintiffs' employment, Plaintiffs are covered employees under the FLSA. *See, e.g. Allison*, 2015 WL 9591500, at *7.

### 2. Plaintiffs Are Covered Employees Under NYLL

Similarly, "[t]o recover under the NYLL, Plaintiff[s] must prove that [they were] . . . 'employee[s]' and that Defendants were 'employers' as defined by the statute." *Li v. Leung*, No. 15-CV-5262 (CBA) (VMS), 2016 WL 5369489, at *8 (E.D.N.Y. June 10, 2016), *adopted as modified by* 2016 WL 5349770 (Sept. 23, 2016) (internal citation and quotation marks omitted). However, "[u]nlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Id.*; *see also Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760 (CBA) (CLP), 2013 WL 6021668, at *7 (E.D.N.Y. Nov. 13, 2013). Accordingly, Plaintiffs are also covered employees under NYLL.

### 3. Defendants' Individual Liability Under the FLSA and NYLL

Under both the FLSA and NYLL, personal liability may be imposed on employers for wage and hour violations. *Ansoumana v. Gristede's Operating Corp.*,

255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  Under the FLSA, "employer" is defined

as "any person acting directly or indirectly in the interest of an employer in relation

to an employee."  29 U.S.C. § 203(d).  "The Supreme Court has emphasized the

'expansiveness' of the FLSA's definition of employer."  *Herman v. RSR Sec. Servs.*

*Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Falk v. Brennan*, 414 U.S. 190, 195

(1973)); *see also Ansoumana*, 255 F. Supp. 2d at 192 (quoting *Reich v. Circle C Invs.,*

*Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) ("[T]he FLSA's definition of employer is

sufficiently broad to encompass an individual who, though lacking a possessory

interest in the 'employer' corporation, effectively dominates its administration or

otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its

employees.")).  The Second Circuit treats the term "employer" for FLSA purposes as

a "flexible concept to be determined on a case-by-case basis by review of the totality

of the circumstances."  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d

132, 141–42 (2d Cir. 2008).  The statutory standard for determining if someone is an

employer is "nearly identical" under both NYLL and the FLSA.  *See Olvera v.*

*Bareburger Grp., LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014); NYLL § 190(3)

("'Employer' includes any person, corporation, limited liability company, or

association employing an individual in any occupation, industry, trade, business or

service.").  As a result, courts in this District routinely conduct the same analysis to

make the employer determination under each statute.  *See, e.g., Hong v. Quest In'tl*

*Limousine, Inc.*, No. 19-CV-4336 (SN), 2021 WL 2188149, at *3 (S.D.N.Y. May 28,

2021) (citing *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017)).

To be held liable as an employer under the FLSA, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). The Second Circuit has articulated an "economic reality" test to determine whether any particular individual is an employer for the purposes of the FLSA. *See Herman*, 172 F.3d at 139. The four-factor test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" *Tackie v. Keff Enter., Inc.*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).

Plaintiffs argue that Defendants Rivera, Guaba, and Castillo were all their "employers" at Guaba Deli. Pl. Mem. at 5–6. Castillo and Guaba owned the business and possessed the authority to hire and fire employees and set wages and schedules. SUF ¶¶ 6, 8, 14–16. Guaba was a supervisor of Ramos usually one day per week. Declaration of Edwin Ramos dated March 22, 2021 ("Ramos Decl."), Dkt. No. 31-1, ¶ 10. Castillo was the president of Guaba Deli, with the authority to make business decisions and manage the store's liquor license and lease. SUF ¶¶

16

7–8.  Rivera managed Guaba Deli's day-to-day operations, hired and supervised Plaintiffs, and paid Plaintiffs in the method of his choosing.  *Id.* ¶¶ 9–13, 17–18. Although Defendants did not keep any employment records concerning Plaintiffs, they all had the power to do so.  *Id.* ¶ 37.

Plaintiffs have sufficiently demonstrated that Rivera and Guaba were their employers, but have failed to do so with respect to Castillo.  Rivera hired Plaintiffs, supervised and dictated their schedules, determined the rate and method of their payment, and had the power to keep employment records.  SUF ¶¶ 9–13, 17, 18. Similarly, Guaba had the power to hire and fire employees, supervise employees, and maintain employment records, and supervised Ramos one day per week.  SUF ¶¶ 14–16, 19; Ramos Decl. ¶ 10.  Castillo, however, while having the power to hire and fire employees, set employee schedules, and maintain employee records, did not exercise any of those powers during Plaintiffs' period of employment.  SUF ¶¶ 6–8. Plaintiffs do not contend that Castillo ever supervised them.  Additionally, Castillo's operational control over the lease and liquor license are not close in degree to Plaintiffs' employment.  *See, e.g. Irizarry*, 722 F.3d at 110 ("the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation").  Moreover, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status."  *Id.* at 109.  The evidence presented suggests that

Castillo did not have significant operational control over Plaintiffs' employment, and therefore was not their "employer" under the FLSA or NYLL.

In sum, Rivera and Guaba (but not Castillo) were Plaintiffs' employers, and accordingly, along with Guaba Deli, they are jointly and severally liable under the FLSA and NYLL for any damages awarded to Plaintiffs. *See Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17-CV-7336 (SLC), 2021 WL 847977, at *5 (S.D.N.Y. Mar. 5, 2021) (imposing joint and several liability on corporate and individual defendants).

### 4.   FLSA and NYLL Statute of Limitations

The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for "'a cause of action arising out of a willful violation.'" *Herman,* 172 F.3d at 141 (quoting 29 U.S.C. § 255(a)).  An FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct is prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "The statute of limitations starts to accrue when the employee begins to work for the employer." *Rodriguez v. Queens Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).

Plaintiffs have demonstrated that Defendants were aware of their obligation to pay the proper minimum wage and overtime rates, but failed to do so.  SUF ¶¶ 40, 41, 45, 49, 56, 57, 59.  Moreover, Defendants did not consult with an accountant or bookkeeper to determine whether they were properly paying

Plaintiffs.  *Id.* ¶ 58.  "This deliberate conduct in disregard of an employer's obligations under the FLSA and the NYLL, as well as the absence of any evidence of attempts to comply with those obligations, demonstrate that Defendants['] conduct was willful."  *Agureyev*, 2021 WL 847977, at *6 (internal citations omitted); *see also Mondragon v. Keff*, 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *10 (S.D.N.Y. May 31, 2019) (allegations of failure to pay sufficient wages were adequate to establish willfulness for statute of limitations purposes).  Therefore, a three-year statute of limitations applies to Plaintiffs' FLSA claims.  *Mondragon*, 2019 WL 2551536, at *10.

Plaintiffs filed this action on June 26, 2020.  The first date of employment for any of the Plaintiffs was January 1, 2018, Compl. ¶ 28, and therefore all of Plaintiffs' FLSA claims were brought within the applicable statute of limitations.

The limitations period for violations of the relevant provisions of NYLL is six years.  *See* NYLL § 663(3).  All of Plaintiffs' claims accrued within the six years preceding the filing of the Complaint, and therefore all of their NYLL claims are timely as well.

### C. Liability for Plaintiffs' Federal and State Wage Law Claims

Having determined that Defendants are subject to the FLSA and NYLL, the Court now turns to Defendants' liability and damages for Plaintiffs' overtime, minimum wage, spread-of-hours, and WTPA claims.

### 1. Overtime Claims

#### a. Liability

Plaintiffs contend that Defendants failed to pay them overtime, as required by the FLSA and NYLL.  Pl. Mem. at 9–11.  Subject to certain exceptions, both the FLSA and NYLL require that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay.  29 U.S.C. § 207(a)(1); NYLL §§ 650 et seq.; 12 NYCRR §§ 142–2.2, 146–1.4; *see also Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 659 (S.D.N.Y. 2015); *Williams v. Bier Int'l, LLC*, No. 14-CV-3894 (LTS) (JCF), 2015 WL 4461668, at *1–2 (S.D.N.Y. July 21, 2015).  "For Plaintiffs to prevail on summary judgment, they must establish both that the parties are covered by the FLSA and NYLL, and that the [d]efendants failed to properly pay them overtime wages."  *Garcia-Devargas v. Maino*, No. 15-CV-2285 (GBD) (JLC), 2017 WL 129123, at *3 (S.D.N.Y. Jan. 13, 2017), *adopted by* 2017 WL 11567211 (Mar. 29, 2017).

The FLSA also requires employers to "make, keep, and preserve" accurate records of their employees' wages and hours.  29 U.S.C. § 211(c).  "[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference."  *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir. 2011) (internal alterations and quotation marks omitted).  The burden on the employee is "not high," and may be met "through estimates based on his own recollection."  *Id*.  Notably, "[t]he law does not

require Plaintiffs to recall exact dates, exact hours, or exact amounts of wages received." *Amaya v. Superior Tile & Granite Corp.*, No. 10-CV-4525 (PGG), 2012 WL 130425, at *8 (S.D.N.Y. Jan. 17, 2012).

"The burden then shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Kim*, 133 F. Supp. 3d at 659 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). On summary judgment, "[i]f [the defendant] failed to compensate [the plaintiffs] properly for even one hour of overtime, liability is established.  Anything else relates only to damages." *Estrella v. P.R. Painting Corp.*, 356 Fed. App'x 495, 497 (2d Cir. 2009); *see also Severino v. 436 West LLC.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *7 (S.D.N.Y. Mar. 19, 2015) ("[O]n the question of liability, Plaintiff still has the burden to show that there is no genuine dispute of material fact as to whether he actually worked some amount of overtime.").

Here, Defendants do not dispute their failure to keep adequate records of employment, hours worked, and compensation paid to Plaintiffs,  SUF ¶¶ 35–37, and admit that Plaintiffs worked more than 40 hours per week and were not paid time-and-a-half for the weeks they worked more than 40 hours. *See* SUF ¶¶ 56–57. Although Defendants dispute the number of hours Plaintiffs worked, Rivera Aff. ¶ 2,  that dispute relates to the *damages* to which Plaintiffs are entitled, and does not undermine Defendants' *liability* for unpaid overtime.  *See Estrella,* 356 F. App'x at 497.

Moreover, to the extent that Defendants claim that Plaintiffs' fixed weekly salary absolved them of any obligation to pay overtime, Rivera Aff. ¶¶ 8, 13, 20, such an argument is unavailing. While "[a]n employer may be exempt from the overtime requirement if there is a salary agreement between employer and employee that sufficiently assures that the employee will receive at least the minimum wage per week," a fixed weekly salary "will 'not be deemed to include an overtime component in the absence of an express agreement.'" *Wong v. Hunda Glass Corp.*, No. 09-CV-4402 (RLE), 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010) (quoting *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA or NYLL "if there is an explicit understanding between the employer and employee as to regular and overtime rates." *Amaya*, 2012 WL 130425, at *9 (citing *Giles*, 41 F.Supp.2d at 316–317).

Defendants contend that they informed Plaintiffs that they "could not pay above the minimum wage." Rivera Aff. ¶¶ 8, 15, 20. To that end, Rivera testified at his deposition that he and Plaintiffs each had a "verbal agreement . . . as far as what the numbers would be working those hours." Deposition of Luis Rivera conducted on January 21, 2021 ("Rivera Dep."), Dkt. No. 31-8, at 40:16–19. However, Rivera also testified that he did not look up the minimum wage before reaching an agreement on salary and admits that he was unaware of the minimum wage requirements. SUF ¶ 59; Rivera Dep. 40:6–19. In addition, Defendants have provided no further evidence demonstrating that Plaintiffs' weekly salary was

intended to account for the minimum and overtime wage rates required by the FLSA or NYLL.  Therefore, in the absence of an explicit agreement on regular and overtime rates, Defendants were required to pay the statutory minimum wage and overtime rages despite Plaintiffs' fixed weekly salary.

For these reasons, Defendants are liable for unpaid overtime wages, and the Court will now calculate Plaintiffs' damages.  Moreover, due to Defendants' failure to keep adequate employment records or to submit anything from which the Court could calculate damages, the Court will rely solely on Plaintiffs' testimony regarding their dates of employment, hours worked, and compensation when determining their damages.  *See, e.g., Kuebel*, 643 F.3d at 362 (plaintiff's own recollection of amount and extent of uncompensated work sufficient in absence of employer records).

### a.  Calculation of Damages for Unpaid Overtime

An employee's "'regular rate' during a particular week is the basis for calculating overtime pay due to the employee for that week."  *Amaya*, 2012 WL 130425, at *7.  Under the FLSA, the regular hourly rate of pay is determined by "dividing the employee's total workweek compensation by the number of hours worked during the workweek."  *Id.; see also Chen v. Patel,* No. 16-CV-1130 (AT) (SDA), 2019 WL 2763836, at *9 (S.D.N.Y. July 2, 2019) (quoting 29 C.F.R. § 778.109).  However, New York regulations calculate the regular hourly rate of hospitality industry employees by dividing total weekly earnings "by the lesser of 40 hours or the actual number of hours worked by that employee during the work

week."  12 NYCRR § 146-3.5.[9]  "'[I]f an employee's regular rate is below the required

minimum wage, the employee's overtime rate is calculated using the required

minimum wage as the regular rate.'"  *Perez v. Rossy's Bakery & Coffee Shop, Inc.*,

No. 19-CV-8683 (SLC), 2021 WL 1199414, at *7 (S.D.N.Y. Mar. 30, 2021) (quoting

*Chen*, 2019 WL 2763836, at *9).  Under both the FLSA and NYLL, the overtime

rate is one and one-half times the regular rate and is owed for each hour in excess of

40 hours worked during the workweek.  *Chen*, 2019 WL 2763836, at *9.  The

measure of damages is the amount a plaintiff should have been paid pursuant to

the FLSA and NYLL minus the amount a plaintiff was actually paid.  *See, e.g.,*

*Amaya*, 2012 WL 130425, at *7.

The method of calculation under NYLL yields a higher hourly rate – and

therefore a higher overtime premium and higher damages – than the FLSA in this

case, and therefore the Court will rely on NYLL in determining the damages to

---

[9] Under NYLL, restaurants are considered to be part of the hospitality industry and
the term "restaurant" is defined in part to include "any eating or drinking place that
prepares and offers food or beverage for human consumption . . . on any of its
premises . . ."  12 NYCRR § 146-3.1(b).  Given that Plaintiffs' responsibilities
included food preparation, SUF ¶¶ 22, 27, 32, the Court concludes that Guaba Deli
qualifies as a "restaurant" under the meaning of NYLL and that Plaintiffs were
therefore hospitality industry employees.  *See, e.g., Pareja v. 184 Food Corp.*, No.
18-CV-5887 (JPO) (SDA), 2021 WL 3109621, at *8 n.7 (S.D.N.Y. July 22, 2021)
(supermarket fell within definition of "restaurant"), *adopted by* 2021 WL 2021
3501229 (Aug. 9, 2021); *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT) (BCM), 2019
WL 7403983, at *7 n.6 (S.D.N.Y. Dec. 4, 2019) (employees at deli whose
responsibilities included food preparation were "hospitality industry" employees),
*adopted by* 2020 WL 30344 (Jan. 2, 2020).

award for Defendants' overtime violations.  *See, e.g., Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016).[10]

From October 1, 2018 to December 5, 2019, Ramos worked 66 hours per week and earned $650 per week.  SUF ¶¶ 24, 39.  Using Ramos's regular and overtime rates, the Court calculates the following overtime owed for his period of employment:

**Table 1**: **Ramos Overtime ("OT") Compensation**

| | Weeks Worked | Weekly Hours | Weekly Salary | Regular Rate | Hourly OT Premium | Amount Owed |
|---|---|---|---|---|---|---|
| **Oct. 1, 2018- Dec. 30, 2018** | 13 | 66 | $650 | $16.25 | $24.375 | $8,238.75 |
| **Dec. 31, 2018 – Dec. 5, 2019** | 48 | 66 | $650 | $16.25 | $24.375 | $30,420.00 |

Based on these calculations, Ramos was owed a total of **$38,658.75** ($8,238.75 + $30,420.00).

From January 1, 2018 to January 31, 2019, Vargas worked 60 hours per week and earned $550 per week. SUF ¶¶ 26, 29, 44.  Using Vargas's regular and overtime rates, the Court calculates the following overtime owed for his period of employment:

---

[10] Courts do not grant separate awards under both the FLSA and NYLL because doing so would allow a plaintiff to recover twice for the same loss.  *See, e.g., Quiroz*, 2016 WL 2869780, at *3; *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 n.44 (S.D.N.Y. 2008).

**Table 2**: **Vargas Overtime ("OT") Compensation**

| | Weeks Worked | Weekly Hours | Weekly Salary | Regular Rate | Hourly OT Premium | Amount Owed |
|---|---|---|---|---|---|---|
| **Jan. 1, 2018 – Dec. 30, 2018** | 52 | 60 | $550 | $13.75 | $20.625 | $21,450.00 |
| **Dec. 31, 2018 – Jan. 31, 2019** | 4 | 60 | $550 | $13.75 | $20.625 | $1,650.00 |

Based on these calculations, Vargas was owed a total of **$23,100.00** ($21,450.00 + $1,650.00).

From October 1, 2018 to February 28, 2020, Cruz worked 60 hours per week and earned $550 per week. SUF ¶¶ 34, 48. Using Cruz's regular and overtime rates, the Court calculates the following overtime owed for his period of employment:

**Table 3**: **Cruz Overtime ("OT") Compensation**

| | Weeks Worked | Weekly Hours | Weekly Salary | Regular Rate | Hourly OT Premium | Amount Owed |
|---|---|---|---|---|---|---|
| **Oct. 1, 2018- Dec. 30, 2018** | 13 | 60 | $550 | $13.75 | $20.625 | $5,362.50 |
| **Dec. 31, 2018 – Sept. 30, 2019[11]** | 39 | 60 | $550 | $13.75 | $20.625 | $16,087.50 |

---

[11] In their reply papers, Plaintiffs accepted Defendants' contention that Cruz took three months of leave (from October 1, 2019 to December 30, 2019) for the purposes of this motion. Pl. Reply at 6–7.

| Dec. 31, 2019 – Feb. 28, 2020 | 8 | 60 | $550 | $13.75 | $22.50[12] | $3,600.00 |
|---|---|---|---|---|---|---|

Based on these calculations, Cruz was owed a total of **$25,050.00** ($5,362.50 + $16,087.50 + $3,600.00).

### 2. Cruz's Minimum Wage Claim

In addition to his overtime claims, Plaintiff Cruz argues that he was paid less than minimum wage while employed at Guaba Deli. Pl. Mem. at 8. New York City employers were required to pay their employees at a minimum wage of $12 hourly in 2018; $13.50 hourly in 2019; and $15 hourly in 2020. *See* 12 NYCRR § 146-1.2(a)(1)(i)(a). Under NYLL, as discussed above, a salaried employee's minimum wage is calculated by dividing the employee's total weekly earnings "by the lesser of 40 hours or the actual number hours they worked." *Id.* at § 146-3.5. As calculated above, Cruz was paid a regular rate of $13.75 during his employment at Guaba Deli. Therefore, Cruz was paid more than the minimum wage in 2018 and 2019, but was paid less than the applicable minimum wage of $15.00 in 2020.

Using Cruz's hours and minimum wage requirements, the Court calculates the following actual minimum wages owed for his eight weeks of work in 2020:

---

[12] As Cruz's regular rate in 2020 was below New York's statutory minimum, his overtime rate will be calculated according to the regular rate to which he was legally entitled: $15.00 an hour. *See, e.g., Khan v. AC Auto., Inc.*, No. 20-CV-4949 (RA), 2021 WL 2036706, at *3 (S.D.N.Y. May 21, 2021).

**Table 4: Minimum Wage Compensation Cruz Should Have Earned**

|  | Weekly Salary | Hours Per Week | Regular Rate of Pay | Minimum Wage | Diff. | Weekly Amount Owed | Total |
|---|---|---|---|---|---|---|---|
| **Dec. 31, 2019 – Feb. 28, 2020** | $550 | 60 | $13.75 | $15.00 | $1.25 | $50 | $400 |

### 3.  Wage Theft Protection Act Claims

New York's WTPA requires employers to provide a written wage notice "at the time of hiring."  NYLL § 195(1)(a).  The notice must contain information regarding the employee's "rate of pay," including a statement about the employee's "regular hourly rate and overtime rate of pay."  *Id.*  The penalty for failing to provide such a notice is $50 per day, with a maximum penalty of $5,000.  NYLL § 198(1-b).

Additionally, the WTPA requires employers to provide employees wage statements "with every payment of wages" that contain the dates of work covered by the statement, the rate of pay, and gross and net wages paid.  NYLL § 195(4).  The penalty for failing to provide these wage statements is $250 per day, with a maximum penalty of $5,000.  NYLL § 198(1-d).

As discussed above, Plaintiffs were Defendants' employees for the purposes of the FLSA and NYLL.  Defendants were therefore obligated to provide the required notices under the WPTA.  *See, e.g., Vasquez v. NS Luxury Limousine Service, Ltd.*, No. 18-CV-10219 (AJN), 2021 WL 1226567, at *15 (S.D.N.Y. Mar. 31, 2021).  It is undisputed that Defendants never provided Plaintiffs with a wage notice at the

start of their employment or a wage statement with each payment of wages.  SUF ¶¶ 43, 47, 52–55.  Therefore, Plaintiffs are entitled to summary judgment on this claim and, given the length of their employment, the Court awards them $5,000 each on both WPTA claims, for a total of **$10,000** per plaintiff.

### 4.  Ramos' Spread-of-Hours Claim

The "spread of hours" provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee's spread of hours exceeds ten hours.  12 NYCRR § 142–2.4.  The spread of hours is defined as "the interval between the beginning and end of an employee's work day," including "working time plus time off for meals plus intervals off duty."  *Id*. § 142-2.18.  Effective January 1, 2011, employers are required to pay a spread of hours premium for "all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay."  12 NYCRR § 146–1.6(d).

Out of the three plaintiffs, only Ramos worked shifts greater than ten hours, and he was therefore entitled to a "spread of hours" premium.  *See* ¶¶ SUF 41, 60; Rivera Dep. 33:12–15.  Defendants do not dispute that they failed to pay Ramos the spread-of-hours premium, and admit that they were unaware of such a requirement.  SUF ¶ 60.  Using the relevant minimum wage rate, the Court calculates the following spread of hours premium owed for Ramos's period of employment:

**Table 5**: Spread-of-Hours ("SOH") Ramos Should Have Earned

| | Weeks Worked | Over 10 Hour Days | Minimum Wage | Weekly SOH Owed | Amount Owed |
|---|---|---|---|---|---|
| **Oct. 1, 2018 – Dec. 30, 2018** | 13 | 6 | $12.00 | $72.00 | $936.00 |
| **Dec. 31, 2018 – Dec. 5, 2019** | 48 | 6 | $13.50 | $81.00 | $3,888.00 |

Based on these calculations, Ramos was owed a spread-of-hours premium of

**$4,824.00** ($936.00 + $3,888.00).

### 5. Liquidated Damages

Plaintiffs also seek liquidated damages on their FLSA overtime claims and

their NYLL minimum wage, overtime, and spread of hours claims.  Compl. ¶ 80; Pl.

Mem. at 12–14.  Typically, when an employer violates the overtime requirements,

the FLSA "presumptively awards [liquidated damages in] 'an additional equal

amount,'" to damages awarded.  *Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x

714, 718 (2d Cir. 2014) (quoting 29 U.S.C. § 216(b)).  A district court has the

"discretion to deny liquidated damages where the employer shows that, despite its

failure to pay appropriate wages, it acted in subjective 'good faith' with objectively

'reasonable grounds' for believing that its acts or omissions did not violate the

FLSA."  *Barfield*, 537 F.3d at 150.  To demonstrate "good faith," an employer is

required to "show that it took 'active steps to ascertain the dictates of the FLSA and

then act to comply with them.'"  *Id*. (quoting *Herman*, 172 F.3d at 142).  The burden

on the employer is "a difficult one," such that "double damages are the norm and

single damages the exception." *Id.* (internal alterations and quotation marks omitted).

NYLL also authorizes liquidated damages, and relies upon the same standard as the FLSA. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 503 (S.D.N.Y. 2017) ("Courts have not substantively distinguished the FLSA's standard from the current NYLL standard of good faith" regarding liquidated damages) *aff'd*, 752 F. App'x 33 (2d Cir. 2018); *see also Rana v. Islam*, 887 F.3d 118, 122–23 (2d Cir. 2018) ("in 2009, the liquidated damages provision [in NYLL] was amended to bring it more closely in line with the FLSA" and as such there are no longer "meaningful differences" between the FLSA and NYLL liquidated damages provisions).

Here, Defendants have not demonstrated that they acted in good faith to attempt to comply with the wage requirements.  Indeed, Defendants concede that they did not seek guidance from an accountant or bookkeeper and were aware of the overtime requirements but did not comply.  SUF ¶¶ 56–60; *see, e.g., Vasquez*, 2021 WL 1226567, at *14 (awarding liquidated damages when defendants admitted they "never consulted with anyone to determine the proper way to classify and pay employees").

Although Plaintiffs can establish overtime claims under both NYLL and the FLSA, Plaintiffs "cannot recover twice for the same minimum wage/overtime violations under both federal and state law." *Vasquez*, 2021 WL 1226567, at *14 (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007); *see also Rana*, 887 F.3d at 123 ("We therefore interpret

the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct"). Instead, a plaintiff should recover "under the statute that provides the greatest relief." *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted).

Here, the Court will award liquidated damages under NYLL, because (as explained below), the law allows a plaintiff to recover both liquidated damages and prejudgment interest. *See, e.g., Vasquez*, 2021 WL 1226567, at *14 (awarding liquidated damages under NYLL in part because NYLL allowed recovery of both liquidated damages and prejudgment interest); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017) (awarding damages under NYLL in part because "unlike the FLSA, the NYLL allows for the recovery of both liquidated damages and pre-judgment interest."). Therefore, Plaintiffs should receive liquidated damages in the amounts equal to their principal unpaid wages (including minimum and overtime wages and spread of hours compensation), as follows: **$43,482.75** for Ramos, **$23,100** for Vargas, and **$25,450** for Cruz.[13]

---

[13] While NYLL authorizes liquidated damages that "amount to 100% of the total unpaid wages," *Chen*, 2019 WL 2763836, at *13, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 661 (E.D.N.Y. 2020) (quoting *Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020)).

### 6. Prejudgment Interest

Plaintiffs also seek prejudgment interest.  Compl. ¶ 80; Pl. Mem. at 14.
Unlike the FLSA, NYLL provides for an award of prejudgment interest even when a
plaintiff is also awarded liquidated damages.  *See* NYLL § 198(1-a) ("In any action
instituted in the courts upon a wage claim by an employee or the commissioner in
which the employee prevails, the court shall allow such employee to recover . . .
prejudgment interest as required under the civil practice law and rules, and . . . an
additional amount as liquidated damages. . . ."); § 663(1) (same); *Reilly v. Natwest
Markets Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999); *Pineda v. Frisolino, Inc.*, No.
15-CV-3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017) ("[C]ourts
typically award pre-judgment interest on damages for NYLL violations.").
Prejudgment interest applies "only to the actual, compensatory damages, and not to
liquidated damages or to damages recovered due to violations of wage statement or
wage notice provisions."  *Soto v. Los Corbaticas Deli Grocery II Corp.*, No. 18-CV-
3602 (JGK) (JLC), 2018 WL 4844018, at *6 (S.D.N.Y. Oct. 5, 2018), *adopted by* 2018
WL 6173713 (Nov. 23, 2018).

New York law provides that interest shall be at the rate of nine percent per
year.  N.Y.C.P.L.R. § 5004.  Prejudgment interest is calculated based on a plaintiff's
"NYLL unpaid minimum, overtime and spread of hours wage claims (that do not
overlap with FLSA recovery)."  *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-
5917 (AJP), 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015).  Courts in this
District have generally calculated prejudgment interest from "a singular, midpoint

date and by multiplying the principal by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered." *Soto*, 2018 WL 4844018, at *7 (S.D.N.Y. Oct. 5, 2018), *adopted by* 2018 WL 6173713 (Nov. 23, 2018).

### b. Ramos's Prejudgment Interest

May 4, 2019 is the approximate midpoint between Ramos's first (October 1, 2018) and last (December 5, 2019) date of employment. As previously calculated, the principal amount he is owed in unpaid overtime wages and spread of hours compensation is $43,482.75. Thus, Ramos should receive nine percent interest on a balance of $43,482.75 from May 4, 2019 until the date that judgment is entered.

### c. Vargas's Prejudgment Interest

July 17, 2018 is the approximate midpoint between Vargas's first (January 1, 2018) and last (January 31, 2019) date of employment. As previously calculated, the principal amount he is owed in unpaid overtime wages is $23,100. Thus, Vargas should receive nine percent interest on a balance of $23,100 from July 17, 2018 until the date that judgment is entered.

### d. Cruz's Prejudgment Interest

June 15, 2019 is the approximate midpoint between Cruz's first (October 1, 2018) and last (February 28, 2020) date of employment. As previously calculated, the principal amount he is owed in unpaid minimum and overtime wages is $25,450. Thus, Cruz should receive nine percent interest on a balance of $25,450 from June 15, 2019 until the date that judgment is entered.

34

### 7. Post-Judgment Interest

"Unlike prejudgment interest, plaintiffs are entitled to post-judgment interest on all money awards as a matter of right." *Soto*, 2018 WL 4844018, at *7 (quoting *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015)).  According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Post judgment interest is calculated using the federal rate set forth in 28 U.S.C. § 1961.  *See, e.g., Tacuri*, 2015 WL 790060, at *12.

Plaintiffs are therefore entitled to post-judgment interest on all sums awarded, including attorneys' fees and costs, commencing when the Clerk of Court enters judgment until the date of payment.

### 8. Reasonable Attorneys' Fees and Costs

Finally, Plaintiffs seek an award of reasonable attorneys' fees and costs. Compl. ¶ 80; Pl. Mem. at 16.  Both the FLSA and NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663; *accord, e.g., Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'").  Moreover, the WPTA also permits "costs and reasonable attorney's fees" in connection with Defendants' violations.  NYLL §§ 198(1-b), (1-d).  Plaintiffs can therefore recover reasonable attorneys' fees and costs.  They are hereby directed to file a motion for fees and costs and submit documentation by **December 29,**

**2021**.  Defendants may file opposition papers by **January 21, 2022**, and any reply papers will be due by **February 4, 2022**.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The Clerk is respectfully directed to enter judgment against Defendants Guaba Deli Grocery Corp. *d/b/a* Guaba Deli, Luis Rivera, and Daisy Guaba (but not Jose Castillo) in the following amounts: $96,965.50 for Ramos, $56,200 for Vargas, and $60,900 for Cruz, plus prejudgment and post-judgment interest as set forth herein. The Clerk is further directed to close Docket No. 30 and mark it as "granted."

**SO ORDERED.**

Dated: November 29, 2021
         New York, New York

JAMES L. COTT
United States Magistrate Judge